UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VINTAGE ASSETS, INC., ET AL.                        CIVIL ACTION

VERSUS                                              NUMBER: 16-0713

TENNESSEE GAS PIPELINE                              SECTION: "H"(5)
COMPANY, L.L.C., ET AL.

## ORDER AND REASONS

Before the Court is the Motion to Compel Production of Documents Listed in Plaintiffs' Privilege Log and Alternative Motion for *In Camera* Inspection of Documents filed by Defendants, Tennessee Gas Pipeline Company, L.L.C., Southern Natural Gas Company, L.L.C., High Point Gas Transmission, L.L.C., and High Point Gas Gathering, L.L.C. (collectively, "Defendants"). (Rec. doc. 96). Plaintiffs filed an Opposition Memorandum (rec. doc. 119), to which was attached a supplemental privilege log (rec. doc. 119-2) intended to address certain shortcomings in Plaintiffs' original log (rec. doc. 119-1) that were pointed out by Defendants in their Motion.

The Court received and reviewed the subject documents *in camera,* held a lengthy hearing on the motion and thereafter took the matter under advisement. The Court has carefully considered all of the pleadings in the record and the arguments of counsel and has re-reviewed the subject documents *in camera* and rules on the motion as follows.

I.   **The Arguments of the Parties**

Defendants generally seek the production of 28 documents listed in both Plaintiffs' original privilege log and their supplemental log. Generally, Defendants make three related arguments. First, none of the documents can be subject to any privileges because they were not shared between parties and their clients and, according to the dates of the documents

listed in the logs, they could not have been created for the purpose of rendering legal services. Second, Defendants complain that the vagueness of the document descriptions set forth in the original log make it impossible for them to determine if the documents are subject to any privilege. Third, "because the Plaintiffs themselves have admitted they have no personal knowledge of the facts underlying this lawsuit, Defendants believe some of the documents alleged by Plaintiffs to be 'privileged' may actually contain discoverable and non-privileged factual information which must be produced." (Rec. doc. 96-1 at p. 2).

Plaintiffs counter first with the observation that Defendants failed to cite a discovery response that was inadequate or a deposition question that was unanswered as a basis for their motion. They go on to note that Plaintiffs responded twice to Defendants' Request for Production No. 19, which sought: "all Documents relating to any facts relevant or material to any of Your claims, allegations or contentions in this case, including all Documents relied on when filing suit on behalf of Plaintiff" by providing some 1,500-plus documents. (Rec. doc. 119 at p. 4). It is apparent to the Court that it is not the 1,500 documents produced but the 28 listed in the privilege logs that are of concern to Defendants.

The Plaintiffs go on to argue that every document on the two logs is subject to both the attorney-client privilege and the work-product privilege because they are all either communications directly between counsel of record (Mr. Braud) and his clients; between what the Court will call "family counsel" (Mr. Inabnett) and his "client" family members; or between future co-litigants seeking to "consult with an attorney together as a group with common interests seeking common representation. . . ." (Rec. doc. 119 at p. 11). Finally, Plaintiffs argue that Defendants have not demonstrated "substantial need" to penetrate the work-product privilege they claim over every withheld document.

2

## II. The Applicable Privileges

### A. *Attorney-Client Privilege*

The parties agree that, because this lawsuit was removed on the basis of diversity jurisdiction, the Plaintiff's claims of attorney-client privilege are governed by Louisiana law. *See Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F.Supp. 1007, 1008–09 (E.D. La. 1995).[1] Article 506(B) of the Louisiana Code of Evidence describes the attorney-client privilege under Louisiana law:

> B. **General rule of privilege.** A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
>
> (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
>
> (2) Between the lawyer and a representative of the lawyer.
>
> (3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
>
> (4) Between representatives of the client or between the client and a representative of the client.
>
> (5) Among lawyers and their representatives representing the same client.
>
> (6) Between representatives of the client's lawyer.

---

[1] Defendants correctly observe that federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege. *See Hodges, Grant & Kaufman v. U.S. Government,* 768 F.2d 719, 720-21 (5th Cir. 1985); *Soriano v. Treasure Chest Casino, Inc.*, No. 95-CV-3945, 1995 WL 736962 at *2 (E.D. La. Dec. 23, 1996).

3

It is axiomatic that the proponent of the privilege bears the burden of establishing its applicability. *In re Vioxx Products Liab. Litig.*, 501 F.Supp.2d 789, 799 n. 15 (E.D. La. 2007). Even where the attorney-client privilege is established by a preponderance of the evidence, however, that privilege can be waived under certain circumstances. *See, e.g., In Re Shell Oil Refinery*, 812 F. Supp. 658, 662-63 (E.D. La. 1993).

The client is the holder of the privilege; therefore, the power to waive the privilege is the client's alone. In this regard, Article 502(A) of the Louisiana Evidence Code provides:

> A person upon whom the law confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.[2]

   B.  *The Work-Product Doctrine*

Rule 26(b)(3) of the Federal Rules of Civil Procedure governs the disclosure of documents prepared in anticipation of litigation and provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i)   they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

As with the attorney-client privilege, the burden of establishing that documents were prepared in anticipation of litigation, and therefore constitute work product, falls on the

---

[2] *See also Succession of Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138, 1143 (La. 1987).

4

party seeking to protect the documents from discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co.*, 173 F.R.D. 431, 432-33 (E.D. La. 1997). The burden of successfully invoking the "substantial need" exception predictably falls on the party invoking it.

The work-product doctrine shields from discovery the materials prepared by or for an attorney in preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947); *Blockbuster Entertainment Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 403 (M.D. La. 1992). It protects two categories of materials: ordinary work-product and opinion work product. *Snowden by and through Victor v. Connaught Lab., Inc.*, 137 F.R.D. 325, 330–32 (D. Kan. 1991); *see generally Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677 (1981).

The work-product doctrine "… is not an umbrella that shades all materials prepared by a lawyer …" *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1927 (1984) ; *see also Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-CV-3759, 2000 WL 1145825 at *2 (E.D. La. Aug. 11, 2000). It focuses only on materials assembled and brought into being in anticipation of litigation. *Piatkowski*, 2000 WL 1145825 at *2. Excluded from the work-product doctrine are materials assembled in the ordinary course of business. *El Paso*, 682 F.2d at 542. Work product protection also does not extend to the underlying facts relevant to the litigation. *See generally Upjohn*, 449 U.S. at 395–96, 101 S.Ct. at 685-86.

As to the waiver effect of mere disclosure to third persons of documents subject to the work-product privilege, the inquiry is somewhat different than that applied when considering waiver of the attorney-client privilege. "The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by "'safeguarding the fruits of an attorney's trial preparations from the discovery attempts of

an opponent.'" *Blockbuster*, 145 F.R.D. at 403 (quoting *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)). For this reason, the mere voluntary disclosure to a third person is insufficient in itself to waive the work-product privilege. *Benson v. Rosenthal*, No. 15-CV-0782, 2016 WL 3001129 at *9 (E.D. La. May 25, 2016) (citing *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994); *Shields*, 864 F.2d at 382 (internal quotations omitted)).

    *C. The Common-Interest Privilege*

Because Plaintiff's allude to the so-called "common-interest" privilege in their brief, the Court briefly discusses it here.

The "common-interest" privilege is essentially a form of attorney-client privilege and is codified in the Louisiana Rules of Evidence at Article 506. Plaintiffs cite both article 506 and *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*[3] in arguing the applicability of the common-interest privilege here. Article 506(B)(3) (which the Court already determined is the applicable rule in this diversity case) provides that a communication is privileged when it is "[b]y the client or his lawyer, or a representative of either, *to a lawyer, or representative of a lawyer*, who represents another party concerning a matter of common interest." *Id.* (emphasis added). The *Morgan Stanley* case cited by Plaintiffs is not particularly helpful here, as it applied federal common law, not Article 506(B)(3), *and* the discussion of the application of the privilege in that case primarily revolves around the unanswered question in the Fifth Circuit of whether "the privilege" applies at all to communications between actual or potential plaintiffs, as opposed to defendants. *Id.* at 703-05.

---

[3] 614 Fed.Appx. 690 (5th Cir. 2015).

6

## III. ANALYSIS

Before turning to a discussion of the merits of the various privilege arguments, the Court makes the following threshold observation. Plaintiffs' complaint that Defendants failed to point to a particular discovery request to which their response was inadequate is unconvincing. After all, Plaintiffs identified the subject documents as responsive to a discovery request (most likely Request for Production No. 19, which is quoted in their own Opposition) and created their two privilege logs for a reason. The Court finds, based on its review of the entire record before it, that the subject documents are responsive – at a minimum – to Request for Production 19.

Moving to the privilege analysis, as noted the Court has reviewed all of the documents withheld by Plaintiffs and finds that, with but a few exceptions, all should be and are protected from disclosure under the attorney-client privilege. The exceptions, discussed in detail below, are the documents identified on the supplemental privilege log (rec. doc. 119-2) as numbers 7 and 14. The remainder of the documents identified need not be disclosed and the Defendants' Motion to Compel is denied as to those documents.

*A. Document Number 7 – Email from Christian Fatzer to Jack de la Vergne, dated October 20, 2014, and Attachment of Slide Excerpts*

Document number 7 is an email from Chris Fatzer ("Fatzer"), who was at that time the client representative of one of the future Plaintiff/landowners in this case, the Mercedes Perez Mack Exempt Trust ("Trust"), to Jack de la Vergne, who was a client representative of a different landowner/Plaintiff, Vintage Assets.[4] The email forwards other emails that had

---

[4] Also carbon-copied on the email were certain client representatives of the Trust, including Joseph Inabnett ("Inabnett"), who is an attorney. There is some dispute whether Inabnett was acting as an attorney both with respect to the potential litigation in 2014 and the instant litigation in 2016, owing to conflicting testimony in that regard. That issue will be discussed below.

been received by Fatzer, along with an "attachment of slide excerpts" that had been received by Fatzer from the Trust's attorney, Jacob Braud ("Braud") (*See* description of slide excerpts on supplemental privilege log, rec. doc. 119-2). The forwarded materials are actually listed separately on the supplemental log as Documents 1 and 2. (Rec. doc. 119-2). To understand the discoverability of Document 7, a discussion of Documents 1 and 2 is necessary.

Document 1 is a request from Fatzer to the Trust's attorney, Braud, about potential litigation. This email is plainly subject to the attorney-client privilege. The second email is Braud's reply, which is also privileged. Braud's email forwards a printed-out "attachment of slide excerpts" regarding ongoing litigation by other landowners against various oil companies and possible future litigation of a similar nature. (Rec. doc. 119-2). The Court is unaware of the provenance of this attachment of slide excerpts, which contains mostly factual materials, such as aerial photographs and copies of pleadings from other cases. However, the Court is satisfied after reviewing the slide presentation that the attachment of slide excerpts as transmitted to Fatzer is subject to both the attorney-client and work-product privileges.

The problem with these documents in the context of the present motion arises, not from the exchange between Braud and Fatzer, but from Fatzer's transmission of all of them – including his emails with his own counsel – to unrelated individuals not entitled to receive the Trust's otherwise privileged communications.

Documents 1 and 2 are attached in their entirety to Fatzer's email to Jack de la Vergne, who was not at the time a client of Braud's and not a client representative of the Trust. To the extent any information set forth in those documents and emails was subject to the

attorney-client privilege, that privilege was waived when it was shared by the holder of the privilege with de la Vergne.

As noted earlier, Article 502(A) of the Louisiana Evidence Code provides:

> A person upon whom the law confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.[5]

Document 7 is a clear example of waiver under Rule 502(A). Nothing in this record links Fatzer and de la Vergne in such a way as to allow the attorney-client privilege to be preserved despite the former's sharing the privileged information with the latter.

To the extent that Plaintiffs argue that waiver did not occur because Inabnett, who <u>is</u> a lawyer, was carbon copied on the email, that argument is unavailing, as the communication was not directed at him for the "purpose of facilitating the rendition of professional legal services to [a] client" of his. *Id.* Art. 506(B).

Plaintiffs have argued that <u>all</u> withheld communications with Inabnett are privileged, pointing to instances in which Inabnett testified that Plaintiff family members would consult him about legal matters and in which those same family members testified that they rely upon his opinions and recommendations. (Rec. doc. 119 at pp. 8-9). Defendants point to the fact that Inabnett is not enrolled as counsel of record in this matter and repeatedly confirmed in his deposition that he does not represent the Plaintiffs. (Rec. doc. 96-1 at p. 9). What the Court finds most important here are these three points: Fatzer's direct communication in Document 7 was with de la Vergne, not Inabnett (who was only copied); there is no established attorney-client relationship between Inabnett as counsel and either de la Verge

---

[5] *See also Succession of Smith,* 513 So.2d at 1143.

or Fatzer; and Fatzer testified that Inabnett "does not represent the Trust." (Rec. doc. 119-3 at p. 3). The fact that Inabnett was copied on the subject email did not prevent its waiver.

Similarly unavailing is Plaintiffs' argument that the "common-interest" privilege protects these communications from disclosure. In brief, Plaintiffs cite a number of cases that discuss the applicability of that privilege but they gloss over the fuller text of the actual evidence rule in Louisiana that sets forth its limits, Article 506(B)(3). That Article states that a communication is privileged if it is "[b]y the client or his lawyer, or a representative of either, *to a lawyer, or representative of a lawyer*, who represents another party concerning a matter of common interest." LSA-C.E. Art. 506(B)(3)(emphasis added). The subject communication, Document 7, was between the representative of one client (Fatzer) and the representative of a different client (de la Vergne), not de la Vergne's lawyer. Article 506(B)(3)'s protection does not extend to such a communication.[6]

To the extent that all or part of Documents 1 and 2 were subject to the attorney-client privilege, that privilege was waived when Fatzer shared that information with de la Vergne in Document 7.

This does not completely end the inquiry, however, because the Court previously found that the slide show accompanying Documents 1 and 2 and shared with de la Vergne as part of Document 7 also reflected the work product of attorney Braud. As such, the mere voluntary disclosure to a third person of that work product is insufficient in itself to waive the work product privilege as it pertains to the slide show. *See, e.g., Benson*, 2016 WL 3001129 at *9 (citing *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994)).

---

[6] It is also worth noting that the United States Court of Appeals for the Fifth Circuit has pointedly noted that whether the common-interest privilege applies to *plaintiffs*, while a "close question," is nonetheless an open one. *Morgan Stanley*, 614 Fed. Appx. at 703.

Defendants have argued, to the extent that any of the withheld communications are protected work product, that they should be entitled to discover those communications under the "substantial need" exception to the rule, which provides that the requesting party may be entitled to otherwise protected work product if it is otherwise discoverable and that party demonstrates "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. Pro. 26(b)(3).

Here, in arguing substantial need, Defendants link the importance of the withheld documents to the potentially dispositive issue of prescription, the outcome of which they say turns on the date upon which any or all of the Plaintiffs knew or should have known they had a potential claim against the Defendants for damage to their land. They further claim that they were stymied in the depositions of each of the Plaintiffs when trying to learn the precise dates upon which each of them learned information sufficient to begin the running of prescription.

Defendants focus on the notion that each Plaintiff has either testified or stated in responses to written discovery that they first learned of potential claims when they met with their current lawyers, including Braud, on **December 18, 2014**. This date is important because Vintage Assets (owned by de le Vergne) filed the instant lawsuit one year to the day from that meeting, on **December 18, 2015**. (Rec. doc. 1-2). The privilege log on its face reveals why the slide excerpts sent from Fatzer to de le Vergne may[7] be germane to the

---

[7] To be clear, this Court expresses no opinion as to the ultimate impact of this information on the prescription issue, other than to find that it is relevant to the question of Plaintiffs' knowledge of potential claims.

prescription argument, as the log states those slides were sent on October 20, 2014, more than one year prior to suit being filed. (Rec. doc. 119-2).

Defendants filed a Motion for Partial Summary Judgment on Prescription (rec. doc. 118) in this case, which this Court has reviewed in connection with the present motion.[8] The Court has also reviewed that deposition testimony of the Plaintiffs made available to it by the parties. This review confirms to the Court's satisfaction: (1) that the subject documents are relevant to the claims and/or defenses in this case, (2) that Defendants have a substantial need for the information contained in the documents given the timing of their exchange and (3) that Defendants cannot obtain their substantial equivalent by other means, as reflected in the responses to testimony the Court has reviewed from Plaintiffs' depositions and their responses to interrogatories.[9] Accordingly, and pursuant to Federal Rule of Civil Procedure 26(b)(3), the five pages that comprise the email exchange in Document 7, along with the 23 pages that comprise the "attachment prepared by Jacob Braud regarding potential litigation" that is part of Document 7 and is described as such in the supplemental privilege log of documents, shall be produced.

---

[8] That Motion was denied without prejudice pending the outcome of this Motion. (Rec. doc. 135).
[9] For instance, in supplemental response to Interrogatory No. 5, de la Vergne responded:
> Jack de la Vergne became aware of the alleged damage to the Property being caused by Defendants based upon information provided by counsel at a meeting on December 18, 2014. Mr. de la Vergne attended this meeting with counsel, Mac Magee, Joe Inabnett, and Chris Fatzer. With regard to the locations of the damages and actions of defendants, plaintiff has no personal knowledge other than that obtained from communications with counsel and review of Plaintiffs' expert reports.

(Rec. doc. 119-4 at p. 2).

*B. Document Number 14 – Email from Christian Fatzer to Jack de la Vergne, dated November 5, 2014*

For the reasons set forth above concerning the relationship (or lack thereof) between Fatzer and de la Vergne, the Court finds that the November 5, 2014 email between them is not privileged and should be produced. The same applies to the preceding email from de la Vergne to Fatzer, dated November 4, 2014. However, the emails forming the earlier part of the email chain attached to those emails are very likely subject to the attorney-client privilege because they all actually include Braud, who now represents both Fatzer and de la Vergne. The Court need not make a firm determination on this question, however, because it finds these earlier emails are irrelevant to any claim or defense in the case and are therefore not otherwise discoverable. The information in those emails will be redacted by the Court and the November 4 and 5 emails described above, along with those redactions, will be provided to Plaintiffs' counsel by the Court for production in accordance with this Order.

### IV.    CONCLUSION

For the forgoing reasons, Defendants' Motion to Compel is **granted in part**; Document 7, which includes Documents 1 and 2 and the "attachment of slide excerpts" included therewith, shall be produced. A redacted version of Document 14 (to be provided to Plaintiffs' counsel by the Court) shall also be produced. The production ordered herein is to take place no later than **7 days following entry of this Order.**

As to the remainder of the relief sought by Defendants in their Motion, the Motion is **denied**.

New Orleans, Louisiana, this  28th  day of                June                , 2017.

                                                                    _____
                                                                                 MICHAEL B. NORTH
                                                                    UNITED STATES MAGISTRATE JUDGE