# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

VINTAGE ASSETS, INC.                                    CIVIL ACTION

VERSUS                                                  NO: 16-713

TENNESSEE GAS PIPELINE                                  SECTION: "H"
COMPANY, L.L.C. ET AL.

## ORDER AND REASONS

Before the Court are Defendants Tennessee Gas Pipeline Company, LLC, Southern Natural Gas Company, LLC, High Point Gas Transmission, LLC, and High Point Gas Gathering, LLC's Partial Motion for Summary Judgment on Duty to Maintain Canal and Canal Banks (Doc. 117); Motion for Summary Judgment on Prescription (Doc. 190); Partial Motion for Summary Judgment on Claims for Trespass and Disgorgement of Profits (Doc. 111); and Plaintiffs'[1] Partial Motion for Summary Judgment (Doc. 122). For the following reasons, Defendants' Motion for Summary Judgment on Duty to Maintain Canal and Canal Banks is GRANTED IN PART; Defendants' Motion for Summary Judgment on Prescription is DENIED; Defendants' Partial Motion for Summary Judgment on Claims for Trespass and Disgorgement of

---

[1] Plaintiffs are Vintage Assets, Inc.; Jacques Perez de La Vergne; Suzanne de La Vergne McIntosh; Anne Perez Inabnett; Susan Perez Magee; Joan Elizabeth Heather Huey; John R. Perez, III; Arthur S. Huey, IV; Renee Perez Sachs; and Mercedes Perez Mack Exempt Trust, and Whitney Bank Successor Trustee.

1

Profits is GRANTED; and Plaintiffs' Partial Motion for Summary Judgment is GRANTED IN PART.

## BACKGROUND

Between 1953 and 1970, Defendants' predecessors received eight right-of-way servitudes crossing various portions of Plaintiffs' property, which authorized the construction and operation of pipelines and dredge canals. Plaintiffs allege that Defendants failed to maintain these canals, resulting in erosion and damage to their property. It is undisputed that the widths of the canals now far exceed that which was contemplated by the servitude agreements. Plaintiffs bring state law claims for trespass, breach of contract, and negligence. There are several motions before the Court, discussing whether Plaintiffs can succeed on their trespass claim, whether Plaintiffs' claims are prescribed, and whether Defendants had a duty to maintain the canals. This Court will address each issue in turn.

First, however, a discussion of the various servitude agreements at issue is appropriate. From 1953 to 1970, Plaintiffs' grandfather and later their father granted eight rights-of-way on four different parcels of property to Defendants and their predecessors.

On January 9, 1953, Plaintiffs' predecessors granted a right-of-way to Defendant Southern Natural Gas Company, LLC ("SNG") on Section 31 and 32 of Township 16 South, Range 15 East ("1953 Contract"). This agreement granted Defendants a right-of-way and easement 100 feet in width within which to operate a pipeline. The agreement allowed the pipeline to lay in "open ditches or canals not to exceed 40 feet in width, which may be filled in or left open at the option of Grantee." The agreement prevents Plaintiffs from constructing any obstruction or changing the grade over the pipeline.

On June 15, 1970, Plaintiffs' predecessors granted a right-of-way covering portions of the same parcel to SNG for the purpose of installing a second parallel pipeline ("1970 Contract"). The agreement stated that Plaintiffs granted Defendants a 175-foot pipeline easement, including "the right to lay such pipeline in an open ditch or canal," and the right to widen the existing 40-foot canal by an additional 25 feet. In the agreement, Defendants also agreed to dam or bulkhead the canal at the point where the canal enters and leaves the property.

On January 9, 1953, Plaintiffs' predecessors granted a right-of-way to SNG covering Section 5 of Township 17 South, Range 15 East ("1953 Contract"). That agreement granted Defendants a 100-foot-wide right-of-way "to lay such pipe line or lines in open ditches or canals not to exceed 40 feet in width, which may be filled in or left open at the option of Grantee." The agreement prevents Plaintiffs from constructing any obstruction or changing the grade over the pipeline.

On June 15, 1970, Plaintiffs' predecessors granted to SNG a new right-of-way covering the same portion as the 1953 Contract for the purpose of laying a second parallel pipe line ("1970 Contract"). The agreement granted a 175-foot right-of-way, including "the right to lay such pipeline in an open ditch or canal," and the right to widen the existing canal by an additional 25 feet  The agreement required Defendants to dam or bulkhead the canal where it enters and leaves the property.

On February 13, 1958, Plaintiffs' predecessors granted a right-of-way covering portions of Section 24 of Township 16 South, Range 15 East, and Sections 19 and 20 in Township 16 South, Range 16 East to SNG ("1958 Contract"). The agreement granted a 100-foot easement and the right to lay pipelines in "open ditches or canals not to exceed 40 feet in width, which may

be filled in or left open at the option of Grantee." The agreement prevents Plaintiffs from constructing any obstruction or changing the grade over the pipeline laid pursuant to the agreement.

On May 1, 1964, Plaintiffs' predecessors granted a right-of-way to Defendant Tennessee Gas Pipeline Company, LLC ("TGP") covering Section 5 in Township 17 South, Range 15 East; Section 32 in Township 16 South, Range 15 East; and Section 17, Township 17 South, Range 15 East ("1964 Contract"). The agreement granted a 40-foot pipeline easement, stating that "the open ditch or canal which Grantee may dig will be dug to a minimum depth of approximately minus six feet (-6') below mean low gulf level and will not exceed forty (40') feet in width at the top."

In addition, Plaintiffs' predecessors granted rights-of-way on August 19, 1957 and July 3, 1958 to TGT that simply granted the right to lay pipelines in open ditches or canals "which may be filled in or left open at the option of Grantee." These contracts provided no "not to exceed" measurement for the canals or rights-of-way ("No Measurement Contracts").

The Court will discuss the parties' motions as they relate to each servitude agreement.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue

---

[2] *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

LAW & ANALYSIS

### A. Trespass Claims

First, Plaintiffs argue that the widening of the canals constitutes a trespass on their property. Defendants have filed a Motion for Summary Judgment seeking dismissal of Plaintiffs' claim for trespass and request for disgorgement of profits. In addition, Plaintiffs have filed a Motion for Summary Judgment seeking a finding that Defendants' canals are trespassing on their property. This Court will discuss these motions concurrently in its consideration of the viability of Plaintiffs' trespass claims.

Plaintiffs argue that the Defendants have committed a trespass by allowing the canals that were dredged on Plaintiffs' property pursuant to the servitude agreements at issue to exceed the width of the rights-of-way granted. Further, Plaintiffs allege that Defendants trespassed in bad faith and that Plaintiffs are therefore entitled to the civil fruits earned by Defendants as a result of their trespass. Defendants argue, however, that trespass requires an affirmative, "physical invasion" of property and that the widening of a canal does not constitute an unauthorized physical act by Defendants. They argue that Plaintiffs cannot identify any affirmative act committed on their property by Defendants and that their trespass claims should therefore be dismissed.

Under Louisiana law, a trespass is an act of unlawful physical invasion of the property of another.[10] Plaintiffs set forth two arguments to support their claims for trespass. First, they argue that exceeding the rights granted in a right-of-way results in trespasser liability. Second, they argue that a trespass can occur through negligent acts.

To their first argument, Plaintiffs cite to case law that they argue stands for the proposition that operating outside of a right-of-way constitutes a

---

[10] *Richard v. Richard*, 24 So. 3d 292, 296 (La. App. 3 Cir. 2009).

trespass. This Court, however, finds these cases easily distinguishable. In each of the cases cited by Plaintiffs, the defendants took an affirmative, unauthorized action that constituted a trespass. For example, the cases involved acts of laying a fiber optic cable outside of the area designated by the right-of-way,[11] laying a sewer line without the property owner's consent,[12] or storing construction materials outside of the right-of-way and without a right of storage.[13] Here, Defendants were authorized to (and did) lay their pipelines and dredge canals within the rights-of-way designated by the servitude agreements. Thereafter, through erosion, the canals grew in width to exceed the width of the rights-of-way. Allowing a canal to slowly widen outside of a right-of-way stands in stark contrast to an affirmative act taken without authorization outside the bounds of a right-of-way. Accordingly, this Court finds Plaintiffs' reliance on these cases unconvincing.

Next, Plaintiffs argue that the Defendants' negligence in allowing the canals to widen outside of the bounds of the right-of-way constitutes a trespass. They argue that under Louisiana law a trespass can be brought about by a negligent act. Plaintiffs cite to the Louisiana Fourth Circuit Court of Appeal's opinion in *Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.*, which states that:

> [C]ivil trespass is generally considered to be an intentional tort, requiring proof that the defendant took some intentional action that resulted in harm to the plaintiff. . . . Nevertheless, some Louisiana courts have awarded damages for illegal trespass on one's property, even when committed in good faith. . . . Although the trespass itself might be inadvertent, we find that a defendant generally may not be held liable for trespass under Louisiana law in the absence of evidence that the trespass resulted from some *intentional act* taken by the defendant. Nevertheless, there could be one situation in which a defendant may be held liable for

---

[11] *Booth v. Madison River Commc'ns*, 851 So. 2d 1185, 1188 (La. App. 1 Cir. 2003).
[12] *Gaspard v. St. Martin Par. Sewerage Dist. # 1*, 569 So. 2d 1083, 1085 (La. App. 3 Cir. 1990).
[13] *Barney v. Plaquemines Par. Gov't ex rel. President*, 22 So. 3d 1117, 1120 (La. App. 4 Cir. 2009).

trespass even in the absence of intent—i.e. when the plaintiff offers proof that the defendant was at fault in causing the trespass pursuant to the general tort article, La. C.C. art. 2315.[14]

The court in *Terre Aux Boeufs Land Co.* therefore suggests that a party could be liable for the tort of trespass even if it is caused by a negligent act. The Louisiana Supreme Court has, however, cast doubt on such a holding. In *Hogg v. Chevron USA Inc.*, the Court considered a case involving the underground migration of toxic substances from a neighboring property, which plaintiff alleged was a trespass.[15] It stated that:

> We note, without deciding the issue, that it is questionable whether the tort of trespass even applies in this situation because civil trespass is generally considered to be an intentional tort, requiring proof that the defendant took some intentional action that resulted in harm to the plaintiff. It has been suggested that the action more properly lies in nuisance.[16]

Accordingly, the Louisiana Supreme Court has indicated that to succeed on a trespass claim, the plaintiff must show that the trespasser took some intentional, affirmative action. Although it has not explicitly addressed whether Louisiana law recognizes a claim for trespass caused by a negligent, passive act, this Court finds that its best *Erie* guess is that it does not.[17] Just as in *Hogg* where the alleged trespass was caused by the passive seeping of toxic substances underground, here the alleged trespass was caused by the passive work of erosion. Neither negligent act is sufficient to support a claim of trespass. Such activity is better addressed by a claim of negligence, and Plaintiffs' claims for trespass are therefore dismissed.

---

[14] *Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.*, 803 So. 2d 86, 95 (La. App. 4 Cir. 2001).
[15] *Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 1002 (La. 2010).
[16] Id. at n.11.
[17] When there is no Louisiana Supreme Court ruling on point, the district court must make an Erie guess as to how the state supreme court would decide. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 70, (1938). The role of this court is not "to create or modify state law, rather only to predict it." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000).

### B. Contract Claims

Plaintiffs next bring two distinct breach of contract claims: (1) Defendants breached their duty in all of the servitude agreements to maintain the canals and prevent their widening, and (2) Defendants breached the 1970 Contracts by failing to build a dam or bulkhead on the canals at issue in those agreements. Defendants seek dismissal of Plaintiffs' contract claims on two grounds: (1) that the claims are prescribed, and (2) that the servitude agreements do not create a duty to maintain the canals. In addition, Plaintiffs have moved for summary judgment on each of their contract claims. This Court will discuss each argument in regards to both of Plaintiffs' contract claims.

#### 1. *Breach of Duty to Maintain*

##### a. <u>*Prescription*</u>

As to the first breach of contract claim, Defendants argue that because they have never maintained the canals, prescription began to run at the time the servitude agreements were executed—the latest of which was in 1970. Breach of contract claims are subject to a prescriptive period of ten years, and Plaintiffs filed suit on December 18, 2015.[18] Defendants therefore contend that prescription has long since run on each of Plaintiffs' contract claims. Plaintiffs argue, among other things, that their contract claims are not prescribed because Louisiana's suppletive rules on servitudes apply to impose an ongoing duty to maintain the canals. As discussed in detail below, this Court ultimately holds that the suppletive rules do apply to the servitude agreements at issue to impose a duty to maintain the canals. It is well settled that such a duty is a continuing one.[19] "[T]he life of the duty of a servitude owner not to

---

[18] *See* La. Civ. Code art. 3499.
[19] *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 317 (5th Cir. 2002).

aggravate the condition of the servient estate by allowing a canal to widen is coextensive with the life of the servitude."[20]  Accordingly, Plaintiffs' breach of contract claims as to Defendants' failure to maintain the canals have not prescribed.

### b. *Duty to Maintain*

Defendants have filed a Motion for Summary Judgment, arguing that pursuant to the servitude agreements, they have no obligation to maintain the canals.  Plaintiffs have likewise filed a Motion for Summary Judgment, seeking a holding that the Defendants breached the servitude agreements by failing to maintain the canals.  This Court will consider these arguments concurrently as they relate to each servitude agreement.

### i. 1953 Contracts, 1958 Contract, 1964 Contract and 1970 Contracts

As outlined in detail above, the 1953 Contracts, the 1958 Contract, the 1964 Contract, and the 1970 Contracts contain substantially similar language. Each allow the canals to be left "open" but contemplate a maximum width of those canals.  Both parties argue that these servitude agreements are clear and unambiguous as to whether Defendants have a duty to maintain the canals and canal banks.

Defendants point to the portions of the agreements that allow the canals to be left "open."  They argue that this language unambiguously evinces the parties understanding that Defendants had no obligation to maintain the canal banks.  They argue that while the contracts provide for an obligation to maintain the pipelines, there is no such obligation for the canals. They also argue that although the contracts state that the canals shall not exceed a certain width, this requirement was intended only to determine the width at

_____

[20] *Id.*

construction and does not create a continuing obligation to maintain the canals at that width.

Plaintiffs, on the other hand, argue that the servitude agreements unambiguously require Defendants to maintain the canals at the widths designated therein. They argue that Defendants breached the contracts by allowing the canals to exceed the widths of the rights-of-way.

"When a servitude is established by contract, the extent and mode of using the servitude is regulated by the contract."[21] In determining whether the servitude agreements at issue are ambiguous as to Defendants' duty to maintain the canals, there are two Fifth Circuit decisions of note: *Ryan v. Southern Natural Gas Co.* and *Terrebonne Parish School Board v. Columbia Gulf Transmission Co.*

In *Ryan*, the Fifth Circuit considered whether the defendant had a tort duty pursuant to a servitude agreement to dam a pipeline canal.[22] It held that the agreement explicitly relieved the defendant of a duty to dam the canal.[23] The servitude agreement allowed defendant to construct a pipeline canal on two portions of plaintiff's land—the northern and southern strip.[24] "The agreement required [defendant] to backfill the pipeline canal in the northern strip and allowed the canal in the southern strip to be left open. The agreement specifically prohibited [defendant] from backfilling the southern strip."[25] Plaintiff complained that erosion was causing the southern strip to widen and blamed the defendant's failure to dam it.[26] The court held that because the servitude agreement allowed the defendant the option to leave the canal open,

---

[21] *Ryan v. S. Nat. Gas Co.*, 879 F.2d 162, 164 (5th Cir. 1989).
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*

it explicitly relieved the defendant of a duty to dam the canal in the southern strip.[27]  Because the agreement clearly dispensed of such a duty, suppletive law did not apply to impose it.[28]

In the later-decided *Columbia Gulf*, the Fifth Circuit considered a servitude agreement that gave defendants a right-of-way or easement 100 feet in width "to construct, maintain, operate, repair, replace, change the size of and remove pipe lines and appurtenances thereto, including the right at its election to lay such pipe line or lines in open ditches or canals not to exceed forty feet in width, which may be filled in or left open at the option of the Grantee."[29]  The agreement also prevented the plaintiff from changing the grade over the pipeline.[30]  The court held that the provisions of the servitude agreement were in internal conflict, stating that on one hand that the canals could be left open and could not be regraded, and on the other that they must not exceed a certain width.[31]  "This conflict suggests that the parties either did not anticipate erosion damage in drafting and signing the agreements or did not intend the explicit language of the agreements to resolve the liability question one way or the other."[32]  The court held that suppletive law should apply to determine whether the defendants had a duty to maintain the canals.[33]

The servitude agreements at issue here are far more similar to that discussed in *Columbia Gulf*, and this Court therefore finds its analysis more compelling than that of *Ryan*.  *Ryan* is distinguishable from the issues presented here for a number of reasons.  First, as *Columbia Gulf* pointed out,

---

[27] *Id.*
[28] *Id.*
[29] *Columbia Gulf Transmission Co.*, 290 F.3d at 314.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 315.

the parties in *Ryan* had reached a letter agreement that the defendant would pay the plaintiff $400/per acre that was encroached upon by the canal as it widened.[34]   This agreement is evidence that the parties had in fact contemplated erosion and filled any gap left by the contract regarding that issue.   No such agreement exists here.   In addition, the *Ryan* servitude agreement contained express language that *prohibited* the defendant from backfilling the relevant portion of the canal.[35]   No such language exists here. Finally, the court was only asked to consider whether the defendant had a *tort* duty to *dam* the canal.[36]   Here, the Court is asked to consider whether Defendants have the broader duty under contract to *maintain* the canals.

In an effort to distinguish *Columbia Gulf*, Defendants point to the court's discussion of the "appurtenances" language in the servitude agreements. Defendants correctly point out that there is no language in the agreements before this Court requiring Defendants to "maintain . . . pipe lines and appurtenances thereto."[37]   In *Columbia Gulf*, the court viewed the canals at issue as "appurtenances" of the pipelines, making the two "part and parcel of these conventional predial servitudes."[38]   While no similar language exists here such does not make the court's analysis any less compelling.   Despite finding the canal to be an appurtenance of the pipeline, the *Columbia Gulf* court ultimately concluded that the servitude agreement merely gave the defendant the *right* to maintain the canal but did not speak to its duty.[39]

---

[34] Id. at 314–15.

[35] *Ryan*, 879 F.2d at 163.

[36] *Id.* at n.1 ("The Harrisons do not challenge the district court's finding that prescription prevents them from recovering on their breach of contract claim. Thus, this issue is not before us.").

[37] *Columbia Gulf Transmission Co.*, 290 F.3d at 308.

[38] *Id.* at 314.

[39] *Id.* ("As a matter of contract interpretation alone, the mere grant of a right to maintain a canal does not necessarily impose the duty to maintain it or to take other steps to prevent the canals from widening and the surrounding marsh mat from eroding.").

Indeed, the court held that the servitude agreements were internally inconsistent without reference to the appurtenance language. It stated that:

> [O]n this point each agreement contains an internal contradiction: Each specifically allows the grantee to keep the canals open and bars the [plaintiff] from regrading; but the [] Agreement gives the grantee the right to dig a canal "not to exceed forty feet in width," and the entire width of each servitude is only one hundred feet. The parties variously contend that these provisions resolve the marsh-erosion question one way or the other, but in light of what the summary-judgment evidence tells us about the delicate hydrology of floating marshes, we view these provisions as being in internal conflict, to whatever extent they bear on the question. This conflict suggests that the parties either did not anticipate erosion damage in drafting and signing the agreements or did not intend the explicit language of the agreements to resolve the liability question one way or the other.[40]

The same conclusions could be drawn of the agreements at issue here. Each allows the canals to be left "open" but contemplate a maximum width of the canals and rights-of-way. Three of the agreements prevent Plaintiffs from regrading the area over the pipelines. Just as in *Columbia Gulf*, the agreements are ambiguous as to Defendants' duty to maintain the canals and, indeed, evince a failure to contemplate the effects of erosion.

Having found the servitude agreements to be silent as to the issue of duty, the *Columbia Gulf* court then turned to suppletive law. Indeed, Louisiana Civil Code article 697 provides that where a conventional servitude does not specify the use and extent of the servitude, Louisiana's suppletive rules apply. Defendants argue, however, that the next step in this Court's analysis should be a consideration of parol evidence to determine the intent of the parties. It is clear from the foregoing analysis that the parties did not contemplate the effects of erosion in drafting the servitude agreements, and

---

[40] *Id.*

therefore an investigation into their intent will likely be unhelpful. Indeed, Defendants argue only that the parties must have intended for the agreements to relieve them of an obligation to maintain the canals because (1) Defendants predecessor was a sophisticated lawyer who entered into several right-of-way agreements during the same time period, some of which contained express duties to maintain, and (2) Plaintiffs failed to complain about the widening of the canals for more than 60 years since the first canal was constructed on their property. This evidence does nothing to clarify the ambiguity and internal conflict within the servitude agreements identified above. Defendants do not point this Court to any discussion between the parties regarding whether they intended to include a duty to maintain in the agreements or how they intended to treat the effects of erosion. Defendants' parol evidence is circumstantial, anecdotal, and does nothing to show the true intent of the parties [41]

Instead, this Court will follow the instruction of *Columbia Gulf* and look to suppletive law. While the court in *Columbia Gulf* held that suppletive law applied to fill in the gaps of the servitude agreement, it stopped just short of holding that the suppletive rules espouse a duty to maintain the canals from widening.[42] It merely held that if such a duty exists, it is continuous one and therefore the district court was improper in holding that the plaintiff's claims had prescribed.[43] Indeed, the question of "whether the suppletive law of Louisiana might impose such a duty remains to be resolved."[44]

It is well settled, though, that Louisiana's suppletive law on servitudes imposes "a continuing duty to refrain from injuring or aggravating a servient

---

[41] *See Carter v. BRMAP*, 591 So. 2d 1184, 1188 (La. Ct. App. 1991) ("Because the contract is ambiguous, parol evidence may be used to show the true intent of the parties.").

[42] *Id.* at 317.

[43] *Id.*

[44] *Rose v. Tenn. Gas Transmission Co.*, No. 05-3102, 2009 WL 4891910, at *2 (E.D. La. Dec. 8, 2009).

estate."[45]   The question of first impression before this Court then becomes whether the duty to refrain from aggravating the servient estate encompasses a duty to maintain canals and canal banks from eroding the servient estate. This Court finds that it is self-evident that allowing a canal to widen such that it encroaches on the servient estate or erodes the servient estate into open water constitutes aggravation.   Accordingly, pursuant to suppletive law Defendants have a duty to maintain the canals and canal banks to prevent erosion, and therefore aggravation, of the servient estate.

There is no dispute that Defendants did not maintain the canals at issue and allowed the canals to widen to widths far exceeding that set forth in the servitude agreements.  Indeed, some of the canals have eroded into open water. Defendants do not dispute these facts.  Accordingly, this Court holds that Defendants had a duty to maintain the canals, and that duty was breached. Plaintiffs are entitled to judgment on their claims for breach of the 1953, 1958, 1964 and 1970 Contracts.

ii.   <u>No Measurement Contracts</u>

The remaining servitude agreements contain no "not to exceed" measurement and merely grant Defendants the right to lay pipelines in an open canal "which may be filled in or left open at the option of Grantee."  That said, they do not contain the type of internal confusion present in the other contracts.  Here, the agreements unambiguously give Defendants the right to leave the canals open, and therefore they are absolved of any obligation to backfill or, as *Ryan* held, dam those canals.[46]  This Court interprets this, as other Courts have, to evince an understanding between the parties that the

---

[45] *Id.*

[46] *Ryan*, 879 F.2d at 163.

Defendants were not obligated to take any action to maintain the canals.[47] "[T]he damage to Plaintiffs' marshland results from the continuous flow of water through the canal due to its having 'remained open' . . . . However, [Defendant] was specifically granted the right to keep the canal open through the language of the servitude agreement cited above."[48] Accordingly, Defendants do not have a duty to maintain the canals under the No Measurement Contracts, which granted rights-of-way to TGP in August 1957 and July 1958. Plaintiffs' claims for breach of those agreements are dismissed.

## 2. *Duty to Dam*

### a. Prescription

Defendants next argue that Plaintiffs' breach of contract claims for failure to build a dam or bulkhead as required by the 1970 Contracts have prescribed. In each of the 1970 Contracts, Defendants obligated themselves to construct a dam or bulkhead at the point where the canal enters and leaves Plaintiffs' property. No term for performance of this obligation was provided, however, "[t]he firmly established rule of the jurisprudence of this state is that when no term for performance has been stipulated, the inference will be supplied that the parties intended the obligation to be undertaken within a reasonable time."[49] "The ten-year prescriptive period for contracts does not begin to run until the date the contract is allegedly breached."[50] Accordingly, prescription began to run on Plaintiffs' claim for Defendants' failure to build a dam pursuant to the 1970 Contracts when Defendants failed to build a dam or bulkhead within a reasonable time. Certainly, a "reasonable time" would have elapsed sometime well before December 17, 2005. Therefore, Plaintiffs' claim

---

[47] *See St. Martin v. Quintana Petroleum Corp.*, No. 98-2095, 2001 WL 175226, at *2 (E.D. La. Feb. 21, 2001), aff'd, 32 F. App'x 127 (5th Cir. 2002)

[48] *Id.*

[49] *Loewer v. Tex. Gas Transmission Co.*, 615 F. Supp. 1, 2 (W.D. La. 1984).

[50] *Roba, Inc. v. Courtney*, 47 So. 3d 500, 507 (La. App. 1 Cir. 2010).

for breach of that provision was prescribed on its face when Plaintiffs filed suit on December 18, 2015.

"[I]f prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed."[51]  Plaintiffs argue that the discovery rule of *contra non valentem* applies to suspend the running of prescription until they "knew, or reasonably should have known of the damage."[52]  Plaintiffs argue that they rarely visited the property and had not investigated the canals.  They present evidence showing that none of the Plaintiffs knew of the condition of the canals until a meeting held on December 18, 2014.  Accordingly, Plaintiffs have submitted sufficient evidence to create a genuine issue of material fact regarding when they knew or should have known that Defendants had not constructed a dam or bulkhead pursuant to the 1970 Contracts.  Such a fact issue is best resolved at trial.  Defendants' Motion for Summary Judgment on this issue is therefore denied.

  b. <u>Summary Judgment</u>

Plaintiffs have moved for summary judgment on their claims for breach of the duty to construct a dam or bulkhead in the 1970 Contracts.  They allege that it is undisputed that no dam or bulkhead was ever built on these canals.  Defendants do not dispute that no dams or bulkheads currently exist on the canals at issue, however, they argue that there is a genuine issue of material fact as to this claim for two reasons.  First, they argue that there is no evidence that the bulkheads were not installed at the time of construction of the canals and later removed or washed out.  Second, they argue that the parties could have orally agreed to remove this requirement from the contract.  In support of these arguments, Defendants cite only to their corporate representative's

---

[51] *Wells v. Zadeck*, 89 So. 3d 1145, 1149 (La. 2012).
[52] *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010).

deposition in which he generally stated that he was not aware whether the dams were or were not installed but that Defendants should have installed one unless "there was a reason they didn't install it."[53] The representative, and others, also state, however, that no evidence was found that the 1970 Contracts were ever modified or that the dams were built and then washed away. Such conclusory statements and unsupported conjecture are insufficient to raise a material issue of fact on summary judgment. That said, this Court cannot grant Plaintiffs judgment on these claims until the issue of prescription is resolved. Accordingly, Plaintiffs' request for judgment on their breach of the duty to dam claims is denied.

### C. Tort Claims

Defendants next move for dismissal of Plaintiffs' negligence claims. It is well settled that "when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions."[54] Defendants argue, however, that Plaintiffs' negligence claims should be dismissed because they are grounded in allegations of a passive breach of contract. Louisiana law recognizes a distinction between a passive and active breach of contract and whether that breach gives rise to a tort claim.

> Generally, where a person neglects to do what he is obligated under a contract, he has committed a passive breach of the contract. If he negligently performs a contractual obligation, he has committed active negligence and thus an active breach of the contract. A passive breach of contract warrants only an action for breach of contract; an active breach of contract, on the other hand, will also support an action in tort under La.Civ.Code art. 2315.[55]

---

[53] Doc. 136-11, p. 13.
[54] *Corbello v. Iowa Prod.*, 850 So. 2d 686, 708 (La. 2003).
[55] *Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 655 (5th Cir. 1989).

19

Here, Plaintiffs' allegation in tort is that Defendants were negligent in failing to maintain the canals and prevent them from widening. Accordingly, Plaintiffs allege that Defendants failed to perform an obligation of their contracts—the duty to maintain—which constitutes a passive breach of contract. They do not allege that Defendants negligently maintained the canals. Pursuant to Louisiana law, such a breach does not also give rise to a tort claim.[56]

Plaintiffs respond to this argument only by pointing to the tort analysis in *Columbia Gulf*. *Columbia Gulf*, however, merely discussed the continuing tort doctrine and whether there could be a continuing tort in that case. Its holding stated that if aggravation of the servient estate was found to have occurred through the defendant's failures to act, then a reasonable fact finder could determine that the defendants committed a wrongful act such that the court could find a continuing tort.[57] The court did not discuss the distinction between a passive and active breach of contract and did not hold that the failure to maintain a canal pursuant to a servitude agreement necessarily gives rise to a tort claim. Accordingly, Plaintiffs' tort claims for failure to maintain the canals are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on Duty to Maintain Canal and Canal Banks is GRANTED IN PART;

---

[56] *See Alford v. Anadarko E & P Onshore LLC,* No. 13-5457, 2014 WL 1612454, at *14 (E.D. La. Apr. 22, 2014) ("Here, plaintiffs have not alleged that Anadarko and BP negligently performed their contractual obligations as lessees to the property, because they have not alleged that Anadarko or BP operated on the property or otherwise performed any obligations at all. Instead, they have alleged that Anadarko and BP failed to perform their obligation to restore property under the Civil and Mineral Codes. That alleged breach of contract is passive, not active, and accordingly plaintiffs' tort claim against Anadarko and BP fails.").
[57] *Columbia Gulf Transmission Co.*, 290 F.3d at 325.

Defendants' Motion for Summary Judgment on Prescription is DENIED; Partial Motion for Summary Judgment on Claims for Trespass and Disgorgement of Profits is GRANTED; and Plaintiffs Partial Motion for Summary Judgment is GRANTED IN PART.

Plaintiffs' tort claims for negligence and trespass are DISMISSED WITH PREJUDICE. Plaintiffs' claims for breach of contract of the No Measurement Contracts of August 1957 and July 1958 are DISMISSED WITH PREJUDICE. Plaintiffs are entitled to judgment on their claims for breach of contract regarding the duty to maintain the canals as required by the 1953 Contracts, 1958 Contract, 1964 Contract, and 1970 Contracts. Plaintiffs' claims for breach of contract regarding the obligation to build a dam under the 1970 Contracts remain.

New Orleans, Louisiana this 22nd day of August, 2017.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE