UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VINTAGE ASSETS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-713** |
| **TENNESSEE GAS PIPELINE COMPANY, L.L.C. ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court are Defendants Tennessee Gas Pipeline Company, LLC, Southern Natural Gas Company, LLC, High Point Gas Transmission, LLC, and High Point Gas Gathering, LLC's Motion for Partial Summary Judgment to Limit Remedies for Contract Claims (Doc. 110); Motion for Partial Summary Judgment Dismissing Claims for Restoration of State-Owned Water Bottoms (Doc. 115); and Motion for Partial Summary Judgment Dismissing Claims for Restoration or Damages to Property Within the Rights-of-Way (Doc. 114). For the following reasons, the Motions are DENIED.

## BACKGROUND

Between 1953 and 1970, Defendants' predecessors received eight right-of-way servitudes, ranging from 100 to 175 feet, crossing various portions of

Plaintiffs' property, which authorized the construction and operation of pipelines and dredge canals. The servitude agreements allowed Defendants to lay the pipelines in canals "not to exceed 40 [or in some cases 65] feet in width." Plaintiffs[1] allege that Defendants failed to maintain these canals, resulting in erosion and damage to their property. It is undisputed that the widths of the canals now far exceed that which was established by the servitude agreements. Plaintiffs brought state law claims for trespass, breach of contract, and negligence. As a result of a series of summary judgment motions, this Court dismissed Plaintiffs' tort and trespass claims and granted summary judgment on some of its breach of contract claims. The Court held that Defendants had breached their duty to maintain the canals. Plaintiffs seek compensatory damages and injunctive relief in the form of abatement and restoration. Before the Court are now a series of summary judgment motions by Defendants asking this Court to dismiss Plaintiffs' request for remediation and limit their damages for a number of reasons. This Court will consider each motion in turn.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue

---

[1] Plaintiffs are Vintage Assets, Inc.; Jacques Perez de La Vergne; Suzanne de La Vergne McIntosh; Anne Perez Inabnett; Susan Perez Magee; Joan Elizabeth Heather Huey; John R. Perez, III; Arthur S. Huey, IV; Renee Perez Sachs; and Mercedes Perez Mack Exempt Trust, and Whitney Bank Successor Trustee.

[2] *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[4] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).
[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

### A. Motion for Partial Summary Judgment to Limit Available Remedies for Contract Claims

In their first Motion, Defendants seek to limit Plaintiffs' contract claim remedies in two ways: (1) they argue that the clear terms of the servitude agreements do not allow the remedy of restoration, and (2) they argue that, pursuant to Louisiana law, Plaintiffs' damages are limited to the value of the land lost.

As to the first argument, Defendants contend that the clear and unambiguous language of the contracts forestall an award requiring restoration or backfilling of the canals. They argue that because the servitude agreements give Defendants the option to leave the canals "open," the contracts do not require either remedy. They argue that Plaintiffs cannot obtain specific performance for an obligation that was never required by the contracts. This Court has already held that the servitude agreements still at issue are ambiguous and evince a failure of the parties to contemplate the effects of erosion.[10] This Court applied suppletive law to hold that Defendants had a duty to maintain the canals to prevent the aggravation of the servient estate.[11] Because the agreements did not contemplate erosion, they certainly did not contemplate remediation, and the agreements' failure to provide for such a remedy is therefore unsurprising. Defendants do not cite to any provision of suppletive law forestalling such a remedy.

---

[10] Doc. 218.
[11] *Id.*

4

Second, Defendants seek to limit Plaintiffs' compensatory damages to the fair market value of the land lost. Under Louisiana law, "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."[12] Defendants argue that in this matter the "loss sustained by the obligee" is the land that was eroded by their failure to maintain the canals. They argue then that Plaintiffs' damages should be limited to the fair market value of the land that was eroded. Indeed, the Louisiana Supreme Court has held that when immovable property is damaged by tortious conduct, "damages are measured only by the difference between the value of the property before and after the harm" if "the cost of restoring property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs."[13] The Louisiana Supreme Court has also expressly held, however, that damages to immovable property under a breach of contract claim are not governed by this rule.[14] In *Corbello v. Iowa Productions*, the Louisiana Supreme Court held that when property is damaged pursuant to a breach of contract, the measurement of damages is not limited to the value of the property lost but is instead governed by the contract.[15] Defendants have not cited this Court to any case that calls into question the Court's ruling in *Corbello*. Accordingly, this Court agrees with Plaintiffs that the law does not limit their recovery to

---

[12] La. Civ. Code art. 1995.
[13] *Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co.*, 618 So. 2d 874, 879–80 (La. 1993).
[14]
[15] *Corbello v. Iowa Prod.*, 850 So. 2d 686, 694, (La. 2003).

5

the value of the land lost. Instead, an award of damages shall be governed by the terms of the agreements and the good or bad faith of Defendants.

Indeed, Plaintiffs argue that Defendants' breach was in bad faith, entitling them to greater damages. Louisiana Civil Code article 1996 states that "[a]n obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made," while article 1997 states that "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Accordingly, Plaintiffs contend that they are entitled to all damages that are a direct consequence of the Defendants' bad faith breach. Defendants argue, however, that Plaintiffs have never alleged that Defendants acted in bad faith, and they therefore cannot raise this argument for the first time in opposition to a motion for summary judgment. This Court agrees. Plaintiffs' Complaint, Amended Complaint, and Second Amended Complaint do not contain any allegations of an "intentional and malicious failure to perform."[16] Plaintiffs' allegations are therefore insufficient to put Defendants on notice of such a claim.[17] Accordingly, Plaintiffs' damages award will be governed by the good faith standard of foreseeability. The foreseeability of damages at the time the contract was made is an issue of fact, the resolution of which is inappropriate at the summary judgment stage. Defendants' Motion is therefore denied.

---

[16] La. Civ. Code art. 1997(c).
[17] The parties have asserted additional arguments regarding Plaintiffs' allegation of bad faith, but because the Court finds such a claim was not plead, it need not address these arguments.

## B. Motion for Partial Summary Judgment Dismissing Claims for Restoration of State-Owned Water Bottoms

Defendants next argue that Plaintiffs' claims for restoration should be dismissed because Plaintiffs no longer own the portions of their property that have eroded into open water. Defendants argue that when formerly private land has been encroached upon by erosion such that it now forms part of the bed of a navigable water body, it becomes a public thing and is the property of the State. They argue that because the canals at issue have eroded into open water, that land now belongs to the State, and Plaintiffs have no right to seek its restoration. Defendants also point out that the State has granted oyster leases with respect to some of these areas.

At the outset, the parties dispute who has the burden of proof with respect to this issue. On one hand, Defendants claim that Plaintiffs bear the burden of proof to show ownership as one of the elements of their claims. On the other, Plaintiffs allege that the burden lies with Defendants because they are asserting the State's ownership through erosion as an affirmative defense. In this Court's view, Plaintiffs have submitted title documents that establish ownership of the land at issue. Defendants would now have Plaintiffs further prove that ownership has not been lost in their case-in-chief. This Court finds that Plaintiffs have already carried their burden to show ownership. If Defendants claim that Plaintiffs have lost ownership of their land, they must come forth with competent evidence to establish that fact. Under Louisiana law, "[a]n affirmative defense raises a new matter, which assuming the

allegations in the petition are true, constitutes a defense to the action."[18] As such, Defendants assert an affirmative defense on which they must carry the burden.[19] This Court finds that Defendants have failed to do so.[20]

First, Defendants fail to present any argument or evidence regarding the classification of the body of water into which Plaintiffs' land is alleged to have eroded. Whether Plaintiffs' land has eroded into a river, a lake, or the sea affects the boundary between public and private land and is an issue of fact inappropriate for summary judgment.[21] Second, Defendants make no effort to show that the body of water into which Plaintiffs' land eroded is a "natural navigable water body" such that its bottom is owned by the State.[22] This too is an issue of fact inappropriate for resolution at the summary judgment stage. Third, the parties dispute the effect of the State's grant of oyster leases on the property, however, neither has presented any evidence regarding what, if any, investigation took place regarding ownership of the land prior to the issuance

---

[18] *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014). "In a diversity case, substantive state law determines what constitutes an affirmative defense." *Id.*

[19] *See Fin & Feather, LLC v. Plaquemines Par. Gov't*, 202 So. 3d 1028, 1034 (La. App. 4 Cir. 2016) ("A party defendant who asserts an affirmative defense bears the burden of proof thereof.").

[20] *See Moreland v. United States*, No. 3:11-CV-358-L, 2013 WL 3283700, at *2 (N.D. Tex. June 28, 2013) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."); A. N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE § 4:19 (5th ed.) ("Since different rules of law apply to rivers and lakes with respect to the ownership of banks or shores and of accretions thereto, it is frequently important to determine whether a particular body of water is a river or a lake.").

[21] *See State v. Placid Oil Co.*, 300 So. 2d 154, 175 (La. 1973) (holding that when determining whether a body of water is a lake or stream the court should consider "the size, especially its width as compared to the streams that enter it; its depth; its banks; its channel; its current, especially as compared to that of streams that enter it; and its historical designation in official documents, especially on official maps.")

[22] La. Civ. Code art. 450.

of those leases. Accordingly, this Court holds that material issues of fact and the absence of pertinent information preclude summary judgment on this issue.

As an aside, however, this Court notes its distaste for Defendants' argument. Defendants argue that, even if they breached their duty to maintain the canals so severely that parts of Plaintiffs' property have eroded into open water, they should not now be required to repair that damage because Plaintiffs have lost ownership of their land (thanks to the erosion allegedly caused by Defendants' actions).[23] Defendants' argument, whether legally sound or not, is inequitable at best and offensive at worst. Indeed, "no court was ever organized which would knowingly permit a litigant to profit by his own wrong."[24] Luckily for Defendants, however, "[t]he existence of positive law on the subject precludes the application of equitable concepts."[25]

### C. Motion for Partial Summary Judgment Dismissing Claims for Restoration or Damages to Property Within the Rights-of-Way

Finally, Defendants argue that Plaintiffs should not be permitted to recover damages or remediation for the portions of damaged land within the boundaries of the rights-of-way. Defendants argue that as the dominant estate holder, they have the "right to use the servitude in favor of [their] estate along with any rights which may be accessory to the use of the servitude."[26] They

---

[23] Indeed, this Court is reminded of the school yard goading "Na-na na-na boo boo! Catch me if you can!"

[24] *Hyman v. Hibernia Bank & Tr. Co.*, 139 La. 411, 425, 71 So. 598, 606 (1916); *Aegis Ins. Co. v. Delta Fire & Cas. Co.*, 99 So. 2d 767, 780 (La. Ct. App. 1957).

[25] *H&E Equip. Servs., Inc. v. Sugar & Power Int'l, LLC*, 215 So. 3d 446, 450 (La. App. 1 Cir. 2017).

[26] Doc. 114-1, p.5.

argue that an award of restoration or damages for property within the rights-of-way would interfere with Defendants' use of the servitudes.

Defendants also correctly point out, however, that the "use and extent" of the property inside the rights-of-way are "regulated by the title by which they are created."[27] This Court has already held that the servitude agreements still at issue contain a duty to maintain the canals by function of suppletive law.[28] It must now determine the practical effect of that holding. A duty to maintain the canals practically requires Defendants to maintain the canals at the width of their initial construction. All of the parties agree that the "not to exceed" widths provided for in the servitude agreements—which call for "canals not to exceed 40 [or in some cases 65] feet in width"—govern at least the width of the canals at construction. Therefore, because suppletive law imposes upon Defendants a duty to maintain the canals and the servitude agreements provide for the width of their initial construction, Defendants have a duty to maintain the canals at the "not to exceed" widths provided for in each servitude agreement. Defendants do not point to any contract provision or suppletive law that would prevent Plaintiffs from seeking damages for the breach of this duty simply because some of the damage occurred within the rights-of-way. Indeed, the case law relied on by Defendants does little to persuade this Court.

Defendants cite to a string of easily distinguishable cases, which they assert stand for the proposition that Plaintiffs cannot interfere with their use

---

[27] La. Civ. Code art. 697.
[28] This Court has already dismissed Plaintiffs' claims for breach of contract of some of the servitude agreements, and those agreements are therefore no longer at issue here. Doc. 218.

10

of the rights-of-way. First in *Jackson v. Jackson*, a landowner alleged that her neighbors had trespassed on her land when they dug a new ditch.[29] The Louisiana First Circuit Court of Appeal found that no trespass had occurred because the ditch had been built within an existing right-of-way. A dedication had created the right-of-way "for the perpetual use of the public for street purposes, including rights-of-way for the installation of water mains . . . and other public utilities over, through, upon, under and across same."[30] The court found that "[t]he wording of this dedication is broad enough to encompass the drainage ditch and culverts installed by the developers."[31] Rather than support Defendants' position, the court's reasoning confirms that the use and extent of a servitude is governed by the title by which it was created. The right-of-way at issue in *Jackson* provided for the installation of public utilities and therefore the developers were not liable for installing such. Here, the servitude agreements provide for canals of a certain width. *Jackson* does not support a holding that Defendants cannot be liable for the full damage caused by the breach of that obligation.

In *Accardo v. Chenier Property Partners, LLC*, the court considered whether St. Tammany Parish had committed a taking when it expanded a drainage ditch and removed some trees located within a drainage servitude.[32] The Parish had the authority under state law to construct and maintain drainage ditches as it "may deem necessary."[33] The Louisiana First Circuit

---

[29] *Jackson v. Jackson*, 818 So. 2d 192, 204 (La. App. 1 Cir. 2002).
[30] *Id.*
[31] *Id.*
[32] *Accardo v. Chenier Prop. Partners, LLC*, 2011 WL 2420183, at *4 (La. App. 1 Cir. 2011).
[33] *Id.*

11

Court of Appeal held that no taking had occurred because the widening of the drainage ditch and tree removal occurred within the boundaries of the servitude and therefore the plaintiffs could not show a substantial interference with the free use and enjoyment of their property.[34] Setting aside the fact that no taking is at issue here, the facts of this case are equally distinguishable. Here, Defendants do not have authority under the law or servitude agreements to widen the canals as they deem necessary. Indeed, the servitude agreements require the canals to be constructed and maintained at a certain width. *Accardo* too supports the idea that the dominant estate's rights within a right-of-way are governed by the title by which it was created.

Accordingly, even the cases cited by Defendants support the premise that the extent and use of the servitudes are governed by the servitude agreements.[35] By operation of suppletive law, those agreements impose on Defendants the duty to maintain the canals at the "not to exceed" widths designated therein. Defendants' right to use the servitudes does not trump the obligations created by the servitude agreements and certainly does not give Defendants the right to act with impunity as long as their actions occur within the bounds of the rights-of-way. Defendants have not given this Court any reason to restrict Plaintiffs' damages to those that occurred outside of the rights-of-way or to prevent Plaintiffs from recovering for the full extent of the damage caused by Defendants' breach. A holding in Defendants' favor would lead to an absurd result in which Defendants could breach the servitude

---

[34] *Id.* at *7.

[35] *See also Keeley v. Schexnailder*, 708 So. 2d 838, 842 (La. App. 3 Cir. 1998) (holding that the trial court erred in restricting the servitude and stating that the title should govern because "[t]he extent of the servitude was carefully surveyed, laid out, and described by the grantor").

12

agreements with limited consequence, and Plaintiffs would be powerless to enforce the obligation to maintain the canals at the "not to exceed" widths. Accordingly, Defendants' Motion is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions for Partial Summary Judgment are DENIED.

New Orleans, Louisiana this 28th day of August, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**