UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VINTAGE ASSETS, INC., ET AL.,** | * CIVIL ACTION NO. 2:16-cv-00713 |
| **Plaintiffs,** | * SECTION H |
| versus | * |
| | * JUDGE JANE TRICHE MILAZZO |
| **TENNESSEE GAS PIPELINE COMPANY, L.L.C. & SOUTHERN NATURAL GAS COMPANY, L.L.C.** | * MAGISTRATE JUDGE MICHAEL NORTH |
| **Defendants.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR COSTS AND FEES RELATED TO REMAND

Plaintiffs—Vintage Assets, Inc. ("Vintage"), Jacques Perez de La Vergne, Suzanne de La Vergne McIntosh, Anne Perez Inabnett, Susan Perez Magee, Joan Elizabeth Heather Huey, John R. Perez, III, Arthur S. Huey, IV, Renee Perez Sachs, and Mercedes Perez Mack Exempt Trust— provide this memorandum in support of their motion for an award of all reasonable costs and attorneys' fees related to and arising from the remand of this matter to the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana. The facts are straightforward and demonstrate that Defendants High Point Gas Transmission, L.L.C.("HPGT"), and High Point Gas Gathering, L.L.C. ("HPGG"; collectively with HPGT, "the High Point entities"), at all times possessed knowledge of their ownership structure in order to determine their citizenship for jurisdictional purposes under 28 U.S.C. § 1332, that they had a continuing duty to disclose those facts, and that they failed to do so. This Court has the authority under 28 U.S.C. § 1447(c), Federal Rule of Civil Procedure 37, 28 U.S.C. § 1927, and its inherent powers to award all reasonable costs and attorneys' fees resulting from that failure.

- 1 -

**I.    Background**

The timeline of the development of the jurisdictional facts in this matter show that the High Point entities possessed both the knowledge of the jurisdictional facts and the duty to disclose that knowledge long before they actually did so:

- On **December 18, 2015**, Vintage filed this action against Tennessee Gas Pipeline Company, L.L.C. ("TGP") and Southern Natural Gas Company, L.L.C. ("SNG") in the 25th Judicial District Court for the Parish of Plaquemines.[1]

- On **January 27, 2016**, TGP and SNG filed their Notice of Removal, removing this action to this Court, alleging removal jurisdiction on the basis of complete diversity, with Vintage's citizenship in Louisiana and TGP and SNG's citizenship in Delaware and Texas.[2] Vintage did not move to remand.

- On **September 27, 2016**, Vintage filed its First Supplemental and Amended Complaint.[3] The remainder of the Plaintiffs were added, along with allegations of their citizenship, expanding Plaintiffs' citizenship to Louisiana, Mississippi, and South Carolina.[4] Relying on TGP's and SNG's citizenship allegations in their Notice of Removal, Plaintiffs retained the allegations from Vintage's original state-court Petition that TGP and SNG were Delaware entities with principal business establishments in Texas,[5] and added the

---

[1] R. Doc. 1-2.
[2] R. Doc. 1, at ¶¶ 9-12.
[3] R. Doc. 31.
[4] *Id.* ¶ 1.
[5] *Id.* ¶ 2.

allegation that the court had jurisdiction under 28 U.S.C. § 1332 because the amount-in-controversy was satisfied and there was complete diversity.[6]

- On **October 24, 2016**, Plaintiffs filed their Second Supplemental and Amended Complaint.[7] They did not restate all of the allegations from their First Supplemental and Amended Complaint, instead expressly stating only new allegations adding the High Point entities and regarding the assignment of certain SNG pipeline rights-of-way at issue in the litigation to the High Point entities. Specifically, Plaintiffs alleged that "High Point Gas Transmission, L.L.C., [is] a Delaware limited liability company with its principal business establishment in Denver, Colorado," and that "High Point Gas Gathering, L.L.C., [is] a Texas limited liability company with its principal place of business in Denver, Colorado, formerly known as High Point Gas Gathering, L.P."[8] As to the remaining allegations, the Vintage Plaintiffs generally "re-allege[d] and incorporate[d] herein by reference each and every allegation set forth in the original Petition for Damages and in the First Supplemental and Amended Complaint."[9]

- On **December 28, 2016**, the High Point entities answered the Second Supplemental and Amended Complaint.[10] The High Point entities admitted the allegations in ¶ 2(c) and (d) of the Second Supplemental and Amended Complaint, regarding their states of formation and principal business establishment.[11] With regard to the allegations of the original

---

[6] *Id.* ¶ 3.
[7] R. Doc. 49.
[8] *Id.* ¶ II(2).
[9] *Id.* ¶ I.
[10] R. Doc. 83.
[11] *Id.* at 13.

Petition, the High Point entities denied the allegations of ¶ 3 regarding venue in the 25th Judicial District Court for the Parish of Plaquemines, and instead affirmatively represented that "[v]enue is proper in the United States Eastern District of Louisiana, based on diversity jurisdiction."[12]

- On **March 20, 2017**, Plaintiffs propounded discovery requests on each of the High Point entities, which the High Point entities responded to on **May 3, 2017**.[13] As to each High Point entity, Plaintiffs requested that they "describe in detail the corporate history of [each High Point entity], including, without limitation, its state of incorporation; all name changes, mergers, or other business combinations; … [and] all parent companies, subsidiaries, predecessors, and successors in interest…."[14] HPGT responded:

> High Point Gas Transmission, L.L.C. was incorporated as a Delaware limited liability company on September 8, 2011. HPGT is a subsidiary of High Point Gas Transmission Holdings, LLC, a Delaware limited liability company, which is itself a subsidiary of American Midstream, LLC, a Delaware limited liability company.[15]

HPGG responded:

> High Point Gas Gathering, L.P. was established as a Texas limited partnership on January 27, 2010. High Point Gas Gathering, L.P. was converted to a Texas limited liability company on June 23, 2010, with the resulting name High Point Gas Gathering, L.L.C. HPGG is a subsidiary of High Point Gas Gathering Holdings, LLC, a Delaware limited liability company, which is itself a subsidiary of American Midstream, LLC, a Delaware limited liability company.[16]

---

[12] *Id.* at 2.

[13] *See* High Point Gas Transmission, L.L.C.'s Answers and/or Responses to the First Set of Discovery Propounded by Plaintiffs, Jacques de la Vergne and Suzanne de la Vergne McIntosh (May 3, 2017) (Exh. 1 hereto); High Point Gas Gathering, L.L.C.'s Answers and/or Responses to the First Set of Discovery Propounded by Plaintiffs, Jacques de la Vergne and Suzanne de la Vergne McIntosh (May 3, 2017) (Exh. 2 hereto).

[14] Exh. 1, at 44 (Interrogatory No. 23 to High Point Gas Transmission, L.L.C.); Exh. 2, at 40-41 (Interrogatory No. 23 to High Point Gas Gathering, L.L.C.).

[15] Exh. 1, at 44.

[16] Exh. 2, at 41.

>Despite responding that the chain of parent companies went back to a limited liability company, American Midstream, LLC, neither High Point entity identified the constituent members of that limited liability company at any time in the litigation before this Court.

- On **August 28, 2017**, counsel for all Defendants, including the High Point entities, agreed to including the representation in the joint proposed Pre-Trial Order that "[t]his Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiffs and Defendants."[17]

The parties thereafter proceeded to trial and post-trial briefing, with final judgment entered on May 4, 2018.[18] Defendants, including the High Point entities, appealed from the final judgment by Notice of Appeal filed on June 1, 2018.[19] The Vintage Plaintiffs filed a Notice of Cross-Appeal on June 15, 2018.[20] On July 30, 2018, the Fifth Circuit Court of Appeals requested in its briefing notice that the parties "brief whether complete diversity exists amongst the parties to this appeal," in light of the rule articulated in *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008), that the citizenship of a limited liability company's members must be determined in order to determine the limited liability company's citizenship for diversity jurisdiction purposes.[21] On September 13, 2018, the High Point entities filed a motion to dismiss the cross-appeals and

---

[17] R. Doc. 224, at 4.
[18] R. Doc. 287 (Findings of Fact and Conclusions of Law); R. Doc. 288 (Permanent Injunction); R. Doc. 289 (Judgment).
[19] R. Doc. 290.
[20] R. Doc. 294.
[21] Doc. 00514577495, at 4 (5th Cir. 7/30/2018).

vacate this Court's judgments, for the first time disclosing their constituent membership all the way back through all layers of membership and partnership.[22]

The High Point entities repeated their disclosure from their May 3, 2017 discovery responses that traced their membership back to American Midstream, LLC.[23] Then, for the first time the High Point entities completed the disclosure of the full corporate lineage, disclosing that American Midstream, LLC's sole member is American Midstream Partners, LP.[24] The High Point entities then disclosed for the first time that American Midstream Partners, LP, has a class of limited partners that are holders of "common units" that are "publicly traded on the New York Stock Exchange,"[25] the characteristic of a master limited partnership.[26] Finally, without specifically identifying any of the holders of these limited partnership common units, the High Point entities represented that, on the date they were added to this action on October 24, 2016, "an individual" who resided in Louisiana held shares in American Midstream Partners, LP.[27]

Based on this disclosure, the Fifth Circuit entered a dispositive order vacating the judgment of this Court, dismissing the parties' cross-appeals, and remanding the matter to this Court to remand to the 25th Judicial District Court for Plaquemines Parish, Louisiana.[28]

---

[22] Doc. 00514641187, at 5-6 (5th Cir. 9/13/2018); *see also* Declaration of Leisa Munoz (undated), at ¶¶ 4-9 (Doc. 00514641187, at 18).
[23] Doc. 00514641187 (5th Cir. 9/13/2018), at 18 (Munoz Declaration, at ¶¶ 5-6).
[24] Doc. 00514641187 (5th Cir. 9/13/2018), at 18 (Munoz Declaration, at ¶ 7).
[25] Doc. 00514641187 (5th Cir. 9/13/2018), at 18 (Munoz Declaration, at ¶ 8).
[26] *See Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 903-04 (10th Cir. 2015) ("MLPs are limited partnerships or limited liability companies whose ownership interests, called 'common units,' are publicly traded.").
[27] Doc. 00514641187 (5th Cir. 9/13/2018), at 18 (Munoz Declaration, at ¶ 9).
[28] Doc. 00514665708 (5th Cir. 10/2/2018).

**II.     Analysis**

Under the removal statutes, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In addition, this Court has a separate authority to award costs and fees related to the High Point entities' failure to disclose the jurisdictional facts in response to Plaintiffs' discovery requests: Under Fed. R. Civ. P. 37(d)(3), this Court may award "reasonable expenses, including attorney's fees, caused by the failure" to serve answers to interrogatories, and Rule 26(e) provides that the duty to respond to interrogatories includes the duty to supplement such responses "in a timely manner if the party learns that in some material respect the … response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process of in writing[.]" Further, even if the initial removal is itself proper, fees and costs may be available for bad faith in the post-removal development of the jurisdictional issues under this Court's inherent powers or under 28 U.S.C. § 1927. *See Fleet Nat'l Bank v. Weightman Group*, 2003 WL 21781967, *4 (S.D.N.Y. 2003). This Court retains jurisdiction to determine that an award of costs and fees is appropriate under both § 1447(c), as well as under its power to sanction pre-remand conduct. *See Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992).

The High Point entities' interrogatory responses regarding their corporate structure were incomplete, stopping at American Midstream, LLC. The High Point entities cannot claim to not know the complete make-up of their constituent members; indeed, they made no such claim of ignorance in their motion to the Fifth Circuit. As to an award of costs and fees under § 1927 or this Court's inherent powers, the High Point entities cannot claim that they had a good-faith basis to withhold the information regarding their ownership structure or the citizenship of their ultimate

constituent members. That the citizenship of a limited liability company is determined based on the citizenship of its constituent members is settled law in this Circuit. *See Harvey*, 542 F.3d at 1079-80. Similarly, that the citizenship of a limited partnership is determined based on the citizenship of its partners is settled law in this Circuit. *See Whalen v. Carter,* 954 F.2d 1087, 1095 (5th Cir. 1992) (holding that "diversity jurisdiction in any suit 'by or against' a limited partnership depends on the citizenship of all its partners") (citing *Carden v. Arkoma Assocs.,* 110 S. Ct. 1015, 1021 (1990)); *see also Bankston v. Burch*, 27 F.3d 164, 168 (5th Cir. 1994) ("The clear law after the Supreme Court's decision in *Carden v. Arkoma Associates* is that the citizenship of all partners, limited as well as general, controls the citizenship of the limited partnership itself."). And the High Point entities themselves advocated to the Fifth Circuit here that the master limited partnership structure is treated no differently, citing the Tenth Circuit's decision in *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901 (10th Cir. 2015), as well as a plethora of uncontradicted district court decisions.[29] They had a duty to act accordingly, including by disclosing the information that they alone held, regarding the ultimate make-up of their constituent members, particularly in light of the express discovery request by Plaintiffs seeking exactly such information.

    As a result of the High Point entities' failure to disclose the jurisdiction-busting facts of their ownership structure and the citizenship of their ultimate constituent members, the parties engaged in extensive dispositive motion practice leading to the now-vacated summary judgments of this Court, including briefing and argument of multiple motions for partial summary judgment by the Defendants and one by Plaintiffs, as well as briefing on Defendants' motion for certificate

---

[29] Doc. 00514641187 (5th Cir. 9/13/2018), at 2 & nn. 2, 22.

of appealability upon denial of their summary judgment motions[30]; the briefing and argument of multiple discovery disputes resulting in further vacated orders, including two motions for protective order by Defendants, one motion to compel by Defendants, and two motions to compel by Plaintiffs[31]; the briefing of motions in limine[32]; the parties' joint efforts to construct the Pre-Trial Order[33]; the preparation for and participation in six days of trial[34]; the briefing of post-trial memoranda, including response to Defendants' motion to strike[35]; and the preparation for the appeal up through the point of the Fifth Circuit's order.[36] All of these efforts resulted in costs and incurring attorneys' fees that will have to be replicated at the state court and that would not have occurred if the High Point entities had disclosed the jurisdictional facts timely. In addition, the parties engaged in eight fact depositions of Defendants, jointly retained DTI Global to assist in culling millions of emails, conducted ten fact depositions of Plaintiffs, deposed four to five Plaintiffs' experts, and deposed five to six Defendants' experts, some of which additional efforts may also need to now be replicated at the state court as a result of the High Point entities' withholding of the jurisdictional facts while the parties were litigating in federal court.

This Court may itself determine the amount of reasonable costs and fees to be awarded, or may make the determination that Plaintiffs are entitled to an award of reasonable costs and attorneys' fees and reserve to the state court the determination after remand of the amount of costs

---

[30] *E.g.,* R. Docs. 110, 111, 112, 113, 114, 115, 117, 118, 122, 136, 137, 138, 139, 140, 141, 142, 143, 154, 155, 156, 157, 158, 159, 180, 202, 205, 222, 223, 226, 228, 230.
[31] *E.g.,* R. Docs. 55, 65, 69, 71, 72, 73, 74, 75, 96, 100, 129, 146, 149, 174, 181, 255.
[32] *E.g.*, R. Docs. 150, 151, 152, 153, 176, 177, 178, 179, 183, 184, 185, 186.
[33] R. Doc. 224.
[34] R. Docs. 238, 239, 254, 257, 258, 259, 260, 261.
[35] R. Docs. 274, 275, 276, 278.
[36] R. Docs. 287, 288, 289, 290, 294.

and fees to be awarded. *See Hodach v. Caremark RX, Inc.*, 374 F. Supp. 2d 1222, 1226 (N.D. Ga. 2005); *see also Abels v. Ungarino and Eckert, LLC*, 951 So. 2d 318 (La. App. 1 Cir. 2006).

### III. Conclusion

Based on the straightforward facts of the High Point entities' withholding of the jurisdictional facts that would have resulted in the remand of this matter to the state court prior to the incurring of extraordinary amounts of effort by Plaintiffs (as well as by this Court and the other parties), Plaintiffs request that this Court enter a judgment that the High Point entities are liable to pay all of Plaintiffs' reasonable costs and attorneys' fees incurred as a result of that withholding; and either direct the parties to provide documentation of the amount of such costs and fees or reserve to the state court on remand the calculation of that amount.

Respectfully submitted,

*/s/ H.S. Bartlett III*
**FISHMAN HAYGOOD, L.L.P.**
James R. Swanson (La. #18455)
Lance C. McCardle (La. #29971)
Benjamin D. Reichard (La. #31933)
E. Blair Schilling (La. #35308)
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
jswanson@fishmanhaygood.com

**BALLAY, BRAUD & COLON, PLC**
S. Jacob Braud (La. #28318)
8114 Highway 23, Suite 101
Belle Chasse, Louisiana 70037
Telephone: (504) 394-9841
Facsimile: (504) 394-9945
jacob@nolaattorneys.com

**JONES, SWANSON, HUDDELL
   & GARRISON, L.L.C.**
Gladstone N. Jones, III (La. #22221)
Kevin E. Huddell (La. #26930)

        Eberhard D. Garrison (La. #22058)
        Emma Elizabeth Antin Daschbach (La. #27358)
        H.S. Bartlett, III (La. #26795)
        John T. Arnold (La. #31601)
        Bernard E. Boudreaux, Jr. (La. #002219)
        601 Poydras Street, Suite 2655
        New Orleans, Louisiana 70130
        Telephone: (504) 523-2500
        Facsimile: (504) 523-2508
        gjones@jonesswanson.com

        **VERON, BICE, PALERMO & WILSON, L.L.C.**
        J. Michael Veron (La. #7570)
        J. Rock Palermo, III (La. #21793)
        Alonzo P. Wilson (La. #13547)
        Turner D. Brumby (La. #33519)
        Ashley E. Philen (La. #31285)
        721 Kirby Street (70601)
        P.O. Box 2125
        Lake Charles, Louisiana 70602
        Telephone: (337) 310-1600
        Facsimile: (337) 310-1601
        mike@veronbice.com

        **COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of the electronic filing to the counsel of record for the Defendants.

        */s/ H.S. Bartlett III*
        Harvey S. Bartlett III